**Sandra J. HENNEN, Appellant,**

v.

**Clemons C. HUFF and Roland Peddycoart, Respondents.**

**No. C3–85–1937.**

Court of Appeals of Minnesota.

June 3, 1986.

Review Denied Aug. 13, 1986.

99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979).

Douglas Peine and Richard A. Mosman, Minneapolis, for appellant.

Robert W. Plunkett, Jr., St. Paul, Thomas O. Albers, Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from the denial of appellant Sandra J. Hennen's motion for a new trial. She claims the jury's special verdict finding neither defendant negligent in an automobile accident was contrary to the evidence presented. We reverse on the issue of liability.

## FACTS

On May 1, 1983, appellant Sandra J. Hennen was injured in a two-car collision occurring at the intersection of Highway 10 and County Road H in Mounds View, Minnesota. She was a passenger in a car driven east on County Road H by respondent Roland Peddycoart. Respondent Clemons Huff was traveling south on Highway 10.

The intersection of Highway 10 and County Road H is controlled by electric semaphores. Huff claimed that he saw the light turn green for him when he was approximately 200 feet from the intersection. Peddycoart maintained that he saw the light turn green for him when he was approximately 75 feet from the intersection.

Huff testified that he entered the intersection at a speed of approximately 45 miles per hour. He was in the process of changing from the right to left lanes as he neared the intersection. Before doing so, he checked both mirrors and looked over his shoulder for traffic in the other lane. He then checked the overhead traffic light. He saw no other vehicles on County Road H before proceeding into the intersection.

Huff saw the Peddycoart car when it was only a few feet away and he had no time to swerve or sound his horn before the collision occurred.

Peddycoart testified that he entered the intersection at a speed of approximately 20 to 30 miles per hour and did not see Huff's car until just before impact when he had no time to react.

Hennen was examined at a hospital and was advised three days later that she had sustained broken ribs. The Columbia Park Clinic placed her arm in a sling, and prescribed certain medication to alleviate the pain. In November, 1983 she changed clinics and began to see Dr. Dowdle because the Columbia doctors were unable to treat the headaches and vision problems she began experiencing shortly after the accident.

Hennen saw Dr. Dowdle for several months before she was referred by him to the Noran Pain Clinic for additional therapy. At Noran she was examined by Dr. Richard Johnson, a neurologist, who prescribed glasses to correct her continued vision problems. At the same time she saw Dr. Johnson, she also was seeing Dr. Marcy Ditmanson, an orthopedic surgeon, for pain she was experiencing as a result of her broken ribs.

In the fall of 1984 Drs. Johnson and Ditmanson referred her to Dr. Paul Gannon, an orthopedic surgeon, for a second opinion on her continued chest pain and headaches. Dr. Gannon diagnosed a thoracic outlet compression syndrome and removed Hennen's broken rib to alleviate the pressure.

Although the surgery relieved some of the pain she was experiencing, Hennen continues to suffer from numbness in her arms and fingers and neck pain when she moves her head to the right. She cannot participate in some physical activities, and still receives periodic treatment for the conditions resulting from her injuries.

Before the accident Hennen was employed as a final inspector for circuit boards used in computers. She returned to work in August, 1983 but left a short time later because she was unable to adequately inspect the minute circuits and solder bridges in the board due to her vision problems. Hennen also had difficulty lifting and maneuvering the circuit boards because of the weakness in her arms and numbness she felt in her fingers. She remains unemployed.

The jury returned a special verdict finding no negligence on the part of either Peddycoart or Huff. Damages of $32,765 were awarded. Hennen's motion for a new trial was denied and she now appeals.

## ISSUES

1. Was the jury's liability determination contrary to the evidence?

2. Was the jury's award of damages the product of passion or prejudice?

## ANALYSIS

1. The trial court denied Hennen's motion for a new trial because (1) Hennen failed to prove her case to the jury and (2) evidence supported the jury's determination that neither Peddycoart nor Huff was negligent. The court stated:

In order to recover damages in a negligence action, the burden of proof is on the plaintiff to prove duty, breach of duty, direct cause, and damages. One's initial reaction to this situation might be: "someone must have been negligent." However, as defendant points out, there are three possible ways this accident could have happened. Either one of the defendants was negligent and ran a red light or the semaphores malfunctioned and neither defendant was negligent. It is not required that the jury's decision be one all rational people would choose. Rather, it must simply be reasonable and *based on the evidence*. Here, apparently, the jury found that plaintiff had failed to prove her case as it related to negligence on the part of either defendant.

(Emphasis added).

▪ Hennen argues the trial court's conclusion is improper because it is not in accord with the standard of review on a

motion for a new trial. The standard of review is not whether the jury's determination could be supported by *any* possible construction of the facts, but rather whether the jury's verdict is "justified by the evidence."

■ The question of negligence is for the jury to determine and its verdict should not be disturbed unless there is no evidence which reasonably supports the verdict or it is manifestly contrary to the evidence. *Smith v. Carriere,* 316 N.W.2d 574, 575 (Minn.1982). On reviewing the record, we are unable to find any evidence to reasonably support a finding that neither Huff nor Peddycoart was negligent.

Both drivers claimed the green light was in their favor and that they kept a proper lookout when entering the intersection. Both testimonies were uncontroverted and unimpeached. Thus, there was no evidence available to the jury which contradicted either driver's version of the accident.

Given this type of evidence, it is impossible for both Huff and Peddycoart to have had the green light when the collision occurred.[1] The trial court is correct that a jury's decision must be reasonable and "based on the evidence." In fact, in some cases, the jury's decision may be quite unreasonable but will be sustained if it tracks with the evidence in some way. The trouble here is that there is no evidence whatsoever of a third possible cause of this accident. The only permissible inference, then, was that one of the drivers must have entered the intersection on the red light. Therefore the jury verdict is not reasonably supported by the evidence and we reverse and remand for a new trial on the issue of liability.

2. The next issue raised is whether the jury's award of damages is the product of passion or prejudice.

The special verdict form separated damages into four components. The jury assigned figures for each as follows:

| | | |
|---|---|---|
| (a) | Pain and suffering | $2,016.00 |
| (b) | Wage loss | 7,133.00 |
| (c) | Permanency | 16,400.00 |
| | Total | 32,765.00 |

Hennen argues that each damage figure assigned by the jury is inadequate, given the evidence presented, to fully compensate her for the injuries she sustained as a result of the accident.

■ "It is the rule in this state that the question of whether damages are adequate is addressed in the first instance to the discretion of the trial court." *Tuominen v. Waldholm,* 301 Minn. 492, 493, 221 N.W.2d 709, 710 (1974). A trial court's denial of a motion for a new trial on the grounds of inadequacy of damages will not be overturned except in the most unusual circumstances which constitute a clear abuse of discretion. *Krueger v. Knutson,* 261 Minn. 144, 158, 111 N.W.2d 526, 535 (1961).

Hennen maintains that the wage loss and medical figures arrived at by the jury do not logically reflect the figures introduced by her at trial. With regard to wage loss, testimony at trial was in conflict as to when Hennen could have returned to work after the accident. Medical testimony indicated that Hennen was physically ready to return to work before she did and could have remained there longer even with her physical restrictions.

■ With regard to medical expenses, the damages assigned by the jury were approximately $150 less than the expenses submitted by Hennen at trial. The jury is not required to award all medical expenses as requested. Evidence at trial indicates that some expenses incurred by Hennen were not directly related to the injuries she sustained as a result of the accident but rather were for pre-existing psychological problems.

■ The final two damage figures, pain and suffering and permanency, Hennen as-

1. Peddycoart and Huff suggested in their closing argument that to reconcile the testimony of each driver, the possibility exists the traffic light may have malfunctioned. There was, however, no evidence presented to the jury concerning the operation of the semaphores on the day of the accident.

serts, are so inadequate as to indicate they were given under the influence of passion and prejudice.

The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed.

*LaValle v. Aqualand Pool Co., Inc.,* 257 N.W.2d 324, 328 (Minn.1977) (citing *DeWitt v. Schubauer,* 287 Minn. 279, 177 N.W.2d 790 (1970)).

■ Much of the medical testimony at trial was in conflict, especially as to what injuries and resulting conditions related directly to the accident. Hennen suffered from a number of psychological problems before the accident which required treatment and on one occasion hospitalization. Several doctors testified at trial that the pain experienced by Hennen may have been exaggerated or even feigned, a symptom not inconsistent with her psychological illness. Conflict also existed as to the permanency of her injuries and the need for the surgical procedure she undertook. The diagnosis of Hennen's treating physicians and the disability ratings given by her treating physicians were based almost entirely on subjective findings. The trial court did not abuse its discretion in refusing to set aside the award of damages.

## DECISION

We reverse and remand for a new trial the issue of liability only. The trial court's refusal to set aside the damages award is affirmed.

Reversed in part, affirmed in part and remanded.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent.

As the majority accurately states: Both drivers claimed the green light was in their favor and that they kept a proper lookout when entering the intersection. Both testimonies were uncontroverted and unimpeached. There was no evidence available to the jury which contradicted either driver's version of the accident. Thus, there is no evidence to reasonably support a finding that either Huff or Peddycoart was negligent.

The jury is the sole judge of credibility and believability of witnesses. If both witnesses are equally believable, there is no preponderance in favor of either and the claimant has not met her burden.

No rule of law requires a case to be retried on the same facts in order to find a jury which will believe one party as opposed to another. The plaintiff did not meet her burden of proof. The verdict was "justified by the evidence." The trial court should be affirmed.